Filed 3/1/21  Ukoha v. REGR, LLC CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| IFEOMA UKOHA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>REGR, LLC, et al.,<br><br>    Defendants and Respondents. | B295158<br><br>(Los Angeles County<br>Super. Ct. No. BC482976)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed February 25, 2021, be modified as follows:

On the title page, John T. Schreiber shall be removed from counsel for Plaintiff and Appellant and added to counsel for Defendants and Respondents Gregory Royston and Richard Enderlin.  Counsel listing will read as follows:

Herbert Wiggins and Herbert N. Wiggins for Plaintiff and Appellant.

Michael Shemtoub; John T. Schreiber for Defendants and Respondents Gregory Royston and Richard Enderlin.

There is no change in judgment.

_____

ROTHSCHILD, P. J          CHANEY, J.       FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/25/21  Ukoha v. REGR, LLC CA2/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| IFEOMA UKOHA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>REGR, LLC, et al.,<br><br>    Defendants and Respondents. | B295158<br><br>(Los Angeles County<br>Super. Ct. No. BC482976) |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Green, Judge.  Affirmed.

Herbert Wiggins and Herbert N. Wiggins; John T. Schreiber for Plaintiff and Appellant.

Michael Shemtoub for Defendants and Respondents Gregory Royston and Richard Enderlin.

_____

In 2012, Ifeoma Ukoha filed a complaint against a real estate investor, REGR, LLC, and several Doe defendants, alleging defendants wrongfully foreclosed on her property. In 2017, five and a half years later, Ukoha substituted Gregory Royston and Richard Enderlin, REGR's principals, for Doe defendants, but never served them. In 2018, the trial court granted Royston's and Enderlin's motion to quash service of summons on them, and then granted their motion to dismiss the action for lack of prosecution.

On appeal, Ukoha contends that a defendant corporation's alter ego need not be named as a defendant nor individually served to establish jurisdiction. We disagree, and therefore affirm the judgment.

## BACKGROUND

We take the facts from the third amended complaint, accepting them as true for purposes of this appeal. Nothing in this opinion should be construed as a resolution of a disputed issue of fact or as a determination that any fact is undisputed.

## A.   Real Estate Transactions and Bankruptcy

3904 Gibraltar Avenue Trust owned a 17-unit apartment building located at 3904 Gibraltar Avenue in Los Angeles. The trustee was either Savvy Real Estate, Inc., (Savvy) or Trustee Properties, LLC (TPLLC). David Behrend was the owner and executive officer of both entities. The property was encumbered by a $1.1 million promissory note for a loan made by Velocity Commercial Capital Bank (Velocity Bank) to TPLLC at 6.5 percent interest, secured by a deed of trust in favor of the bank. The deed of trust gave Velocity Bank the right to sell the property in case TPLLC defaulted on the loan. The note and deed of trust were recorded on September 30, 2005.

Two days before the first note and trust deed were recorded, on September 28, 2005, 3904 Gibraltar Avenue Trust sold the property for $1.85 million to plaintiff, who made a $500,000 down payment and executed a second promissory note, for $1.35 million with a 6.625 percent interest rate, in favor of 3904 Gibraltar Avenue Trust, secured by a second deed of trust.

The second promissory note stated the principal amount due on the note included the principal balance owed to Velocity Bank on the first note. The second note also stated that Behrend would make payments on the first note from payments received from plaintiff on the second note. However, Behrend informed plaintiff he owned or controlled Velocity Bank, and she would be the senior lienholder.

On March 25, 2010, Behrend filed for Chapter 7 bankruptcy reorganization in the United States Bankruptcy Court for the Central District of California.

Behrend then caused the trustee of 3904 Gibraltar Avenue Trust to assign the second note and deed of trust to himself in his personal capacity, making them part of his bankruptcy estate.

At some point the bankruptcy trustee converted Behrend's Chapter 7 bankruptcy reorganization to a Chapter 11 liquidation, and in September 2011 moved in the bankruptcy court for authorization to sell at auction the estate's interest in the second note and trust deed, with a minimum purchase price of $6,000.

Behrend, Savvy, TPLLC and 3904 Gibraltar Avenue Trust colluded with a real estate investor, REGR, LLC, to manipulate the bankruptcy auction sales price, exclude plaintiff from bidding, and purchase the note and trust deed for $6,000. On November 14, 2011, REGR purchased the note and trust deed at the auction for $6,000.

Behrend also caused TPLLC to default on the first promissory note.

On January 23, 2012, REGR, controlled by Royston and Enderlin, served and recorded a notice of default and election to sell under the second trust deed, falsely alleging plaintiff was in default on the second note in the amount of $341,793.88, when she actually had a credit of more than $200,000. The property was thereafter sold to a third party.

## B.     Ukoha's Complaint

On April 18, 2012, Ukoha sued REGR and 100 Doe defendants, asserting causes of action for breach of contract, unfair business practices, slander of title, misrepresentation, negligence, breach of fiduciary duty, and unjust enrichment, alleging REGR's collusion with Behrend to fix the bid price of the second note and trust deed at the bankruptcy auction, breach of contract, failure to credit payments she had made, and institution of foreclosure proceedings when she was not in default violated federal law and constituted unfair business practices within the meaning of Business and Professions Code section 17200 et seq.

On September 20, 2017, Ukoha filed a third amended complaint.

On October 31, 2017, five and a half years after filing the complaint, Ukoha for the first time substituted Royston and Enderlin for Doe defendants.

On September 10, 2018, the trial court granted Royston's and Enderlin's motion to quash service of summons, finding any possible service untimely.

On October 16, 2018, the court granted Royston's and Enderlin's motion to dismiss the complaint under both the two-

4

year discretionary and three-year mandatory provisions of Code of Civil Procedure section 583.250.

Ukoha appeals from the judgment of dismissal.

**DISCUSSION**

Ukoha contends that beginning in 2014, Enderlin and Royston filed several pleadings with the superior court on REGR's behalf, even after REGR had dissolved, which constituted general personal appearances that vested the court with personal jurisdiction over them as REGR's alter egos. We disagree.

" 'To sustain a *personal* judgment the Court must have jurisdiction of the subject-matter, and of the person.' " (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 138 (*Rockefeller*).) " 'The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.' " (*Id.* at p. 139.)

A court asserts jurisdiction over a party by service of process. (*Rockefeller*, *supra*, 9 Cal.5th at p. 139; Code Civ. Proc., § 410.50, subd. (a).) " 'Process' signifies a writ or summons issued in the course of a judicial proceeding." (Code Civ. Proc., § 17, subd. (b)(7).)

Service of process performs a second important function. "From the defendant's perspective, '[d]ue notice to the defendant is essential to the jurisdiction of all courts, as sufficiently appears from the well-known legal maxim, that no one shall be condemned in his person or property without notice, and an opportunity to be heard in his defence." [Citation.] Service of process thus protects a defendant's due process right to defend

5

against an action by providing constitutionally adequate notice of the court proceeding." (*Rockefeller*, *supra*, 9 Cal.5th at p. 139.)

A party may waive service of process and "voluntarily submit himself to the jurisdiction of the court." (*Rockefeller*, *supra*, 9 Cal.5th at p. 139.) " 'Process is waived by a general appearance, in person or by attorney, entered in the action, or by some act equivalent thereto, such as the filing of a pleading in the case or by otherwise recognizing the authority of the court to proceed in the action.' " (*Ibid.*, italics omitted.) "A general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a).)

A "summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant. For the purpose of this subdivision, an action is commenced at the time the complaint is filed." (Code Civ. Proc., § 583.210, subd. (a).) If service is not made within this time, the action must be dismissed. (Code Civ. Proc., § 583.250.)

Here, the complaint was filed in 2012. Enderlin and Royston have never been served. Therefore, the trial court had no choice but to dismiss the complaint.

Ukoha correctly observes that the time limit for service does not apply if the defendant has made a general appearance. (Code Civ. Proc., § 583.220.) She argues that because they were REGR's alter egos, Enderlin and Royston made general appearances on their own behalves when they filed pleadings on REGR's behalf. We disagree.

"The term 'appearance' is defined as . . . a coming into court as a *party* to a suit . . . ." (28 Cal. Forms of Pleading and Practice—Annot. (2020) § 323.61, italics added.) Enderlin and Royston were not made parties to this lawsuit until October 2017,

6

when they were substituted for Doe defendants.  Therefore, none of the documents they filed on REGR's behalf brought them into court as parties.

Ukoha argues that Enderlin and Royston at all times directed and controlled the activities of REGR, including causing it to dissolve and continue litigation in this case after dissolution, all of which worked to deceive Ukoha and the court as to the actual wrongdoers in these proceedings.  Whether or not these allegations are true, Ukoha's remedy was to name Enderlin and Royston as defendants and serve them with the complaint within three years.  This she failed to do.  The alter ego doctrine works to fix liability on the true actors behind a faux corporation, but only once personal jurisdiction exists over them.  The doctrine cannot create personal jurisdiction.

There is a post-judgment exception.  Code of Civil Procedure section 187 provides that once a court has jurisdiction over a party, it may employ "all the means necessary to carry [its jurisdiction] into effect."  (Code Civ. Proc., § 187.)  "This includes the authority to amend a judgment to add an alter ego of an original judgment debtor, and thereby make the additional judgment debtor liable on the judgment.  [Citation.]  Amending a judgment to add an alter ego of an original judgment debtor ' "is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." ' "  (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280.)  No similar procedure exists to exercise personal jurisdiction over a corporation's alter egos before judgment.

7

During oral argument, Ukoha's counsel acknowledged that Code of Civil Procedure section 187 enables a plaintiff to amend a judgment by adding the alter ego of a corporate judgment debtor, but he chose not to rely on this procedure.  Instead, he argues that an alleged alter ego ispo facto waives notice and jurisdiction.  We disagree.  To dispense with the requirement to name and serve a corporation's alleged alter egos would substantially change the law for no discernable benefit, given that a plaintiff could simply name the alter ego as a defendant in the first place or move to amend the judgment after trial.

That Enderlin and Royston had actual knowledge of the litigation, and knew that Ukoha alleged their individual wrongdoing, bodes nothing.  Until Ukoha named them as parties, Enderlin and Royston had no notice that a personal defense would be required.

Ukoha cites several cases for the proposition that the alter ego doctrine will pierce the corporate veil so as to vest a court having jurisdiction over the corporation with *subject matter* jurisdiction over the corporation's alter egos.  The point is not in dispute, but it is irrelevant here.

Ukoha also relies upon *Mathes v. National Utility Helicopters, Ltd.* (1977) 68 Cal.App.3d 182, which is inapposite.  There, the court held that jurisdiction over a parent corporation gives rise to personal jurisdiction over its subsidiary corporation "if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence." (*Id*. at p. 190.)  "The basic test is whether the one corporation is the alter ego of the other." (*Ibid*.)  But *Mathes* does not suggest that personal jurisdiction automatically exists over *individuals*

8

who control a corporation, and we decline to so extend its holding. Even if we did, that would not solve the due notice problem.

When a corporation is a defendant, appearances on the corporation's behalf by its non-party alter egos neither vests the court with personal jurisdiction over them nor provides notice that the plaintiff intends also to hold them liable.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.